IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                              Criminal No. 3:09CR299

ALEXANDER JESUS SANTIAGO

**MEMORANDUM OPINION**

Alexander Jesus Santiago, proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion"). (ECF No. 41.) Santiago asserts entitlement to relief upon the following grounds:

Claim One        Santiago was denied his constitutional right to confront his accuser.[1] (Mem. Supp. § 2255 Mot. 4.)

Claim Two        Trial counsel, Carolyn Grady, performed deficiently by encouraging Santiago to sign a stipulation regarding the admission of the Certificates of Analysis prepared by Jennifer M. McKay.[2] (Id. at 7.)

Claim Three      Trial counsel performed deficiently by failing to object to the seating of a biased juror. (Id. at 9.)

Claim Four       Counsel performed deficiently by failing to file a motion to suppress. (Id. at 11.)

---

[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

The Government has responded.   (ECF No. 46.)   Santiago has replied.   (ECF No. 49-1.)   For the reasons that follow, Santiago's claims will be dismissed.

## I.   PROCEDURAL HISTORY

Following a jury trial, Santiago was found guilty of possession with intent to distribute one hundred or more grams of heroin.   United States v. Santiago, 406 F. App'x 746, 747 (4th Cir. 2010).   The Court sentenced Santiago to eighty-seven months of imprisonment. (J. 2, ECF No. 26.)   Santiago appealed. The United States Court of Appeals for the Fourth Circuit affirmed the decision of this Court.   Santiago, 406 F. App'x at 748.

## II.   CERTIFICATES OF ANALYSIS

During Santiago's jury trial, on November 9, 2009, the Government's first witness, Scott Caporossi, a special agent with the United States Drug Enforcement Agency, testified, inter alia, to the chain of custody for the heroin found in the car Santiago was driving at the time of his arrest.   (See, e.g., Nov. 9, 2009 Tr. 140-42.)   Following the lunch recess, during Agent Caporossi's testimony, the Government introduced two Certificates of Analysis for bags of heroin the police had seized.   (Nov. 9, 2009 Tr. 143-45.)   At the conclusion of the trial, the Government introduced a stipulation signed by counsel

for the Government, counsel for Santiago, and Santiago, wherein they agreed the Certificates of Analysis prepared by Jennifer McKay, a Forensic Chemist with the United States Department of Justice, Drug Enforcement Administration's Mid-Atlantic Laboratory, could be "introduced into evidence without further authentication, without objection on hearsay or other grounds." (Nov. 9, 2009 Tr. 281-82.)

In Claim One, Santiago claims his Sixth Amendment right to confront his accuser was violated by the admission of the Certificates of Analysis for the heroin without the presence of the chemist who prepared the Certificates.

In Claim Two, Santiago contends that trial counsel, Carolyn Grady, performed deficiently by encouraging him to sign the stipulation regarding the admission of the Certificates of Analysis. Santiago contends that he signed the stipulation only after Agent Caporossi had testified to the content of the Certificates of Analysis. Specifically, Santiago asserts:

> Surely, counsel was derelict and functioned below the expected norm when she had petitioner to sign a "stipulation" which was after fact and only was done to give an impression that it was proper, when it is grossly improper, inasmuch it wasn't timely and it was only done after the fact of the Crawford-Menlendez-Dia[z[3]] violation.

(Mem. Supp. § 2255 Mot. 8, ECF No. 42.)  In an unsworn affidavit submitted contemporaneously with his § 2255 Motion, Santiago

---

[3] Crawford v. Washington, 541 U.S. 36 (2004); Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).

represents, "During my trial, well after the completion of Agent
Caporossi's testimony, my attorney had me . . . sign the
'stipulation' which only reflected what Agent Caporossi had
already testified to, under oath." (Mem. Supp. § 2255 Mot.
Ex. A, at 1.) Thereafter, Santiago submitted a reply wherein he
swears that the use of the past tense in the stipulation
reflects that the parties signed the stipulation after all of
the pertinent exhibits had been entered into evidence. (Reply
1-3, ECF No. 49-1.) Santiago, however, never specifies exactly
when he signed the stipulation.

As explained below, the expanded record refutes Santiago's
assertion that he signed the stipulation only after the
Government had introduced the Certificates of Analysis through
Agent Caporossi.[4] The Assistant United States Attorney swears
that Ms. McKay, the forensic chemist who prepared the
Certificates of Analysis, was present and ready to testify at

---

[4] By Memorandum Order entered on May 23, 2014, the Court
ordered Ms. Grady and counsel for the United States, within
fifteen (15) days of the date of entry thereof, to file sworn
statements regarding the entry of the stipulation. (ECF No. 53,
at 2.) Ms. Grady filed a timely response to the Memorandum
Order. (ECF No. 54-1.) Counsel for the United States failed to
file her response until July 9, 2014. (ECF No. 57.) Counsel
for the United States explains she experienced difficulties
attempting to obtain an affidavit from personnel with the Drug
Enforcement Administration's Mid-Atlantic Laboratory. (Id. at
1-2.) Santiago seeks default judgment based on the failure of
the United States to timely comply with the May 23, 2014
Memorandum Order. (Mot. Default Judgment 1-3, ECF No. 56.)
Given the lack of merit of the underlying claim and the
Government's eventual compliance with the May 23, 2014
Memorandum Order, Santiago's Motion for Default Judgment (ECF
No. 56) will be denied.

Santiago's trial. (ECF No. 57-1, at 1-2.) The Assistant United States Attorney swears that before the introduction of the Certificates of Analysis the parties were able to enter into the stipulation regarding the admission of the Certificates of Analysis and then release McKay from her obligation to testify. (Id. at 2.) The Assistant United States Attorney also explains that the parties entered into the stipulation at the lunch recess on the first day of trial. (Gov't's Resp. 9-10.)

The preceding version of events is supported by a letter from the U.S. Department of Justice Drug Enforcement Administration Mid-Atlantic Laboratory that states, according to McKay's "travel records, she departed Largo, Maryland for the [Richmond] courthouse . . . at 7:00 a.m. on November 9, 2009. She arrived at the courthouse at 10:00 a.m. She left the courthouse later that day 1:30 p.m., and arrived back in Largo, Maryland at 4:30 p.m. that afternoon." (Gov't's Resp. Ex. 1, at 1 (spacing and punctuation corrected).) The lunch recess for the first day of trial occurred at 1:10 p.m. (Nov. 9, 2009 Tr. 143.) The timing of the lunch recess and McKay's travel records support the Government's version that the parties signed the stipulation during the lunch recess, and before Agent Caporossi's introduction of the Certificates of Analysis.

5

Furthermore, Ms. Grady's sworn statement demonstrates that
Santiago signed the stipulation on the first day of trial, prior
to the introduction of the Certificates of Analysis.

I fully prepared for the jury trial which was
held November 9-10, 2009.  In preparation for trial, I
developed a defense and prepared to cross examine all
witnesses involved in the case.  Mr. Santiago and I
examined and reviewed all discovery, including the
laboratory analysis, and the expert designation of Ms.
McKay.

In preparation for trial, I discussed the
witnesses and their anticipated testimony with Mr.
Santiago.  We developed our defense which was to
challenge the elements of knowledge and possession.
My trial strategy focused on challenging those two
elements.  We also agreed that we would require the
government to present every witness involved in the
case.

Prior to trial, the government provided a
stipulation which we declined to sign.  I indicated to
the government that we would reconsider our decision
if the chain of custody for the seized drugs was
complete and the necessary witnesses appeared at
trial.

On the day of trial, every witness listed on the
government's witness list previously filed with the
court were present.

At some point in the morning hours on the first
day of trial, I talked with Mr. Santiago about the
stipulation that the government had previously
provided.  Although I cannot recall the exact
conversation, it would have been my practice to talk
with Mr. Santiago about signing the stipulation after
it was apparent that the government had all of their
witnesses present for the chain of custody for the
heroin.  My prior investigation and review revealed
that there were no defects in the laboratory analysis.
It would have also been my practice to tell Mr.
Santiago that there was no need to divert the jury's
attention away from our defense with arguments about a
readily provable fact - that the substance found was
heroin.  This would also have avoided the government's
case gaining more credibility thought the presentation
of expert testimony.

I do not recall the exact timing of the testimony
in relation to the signing of the stipulation but I

6

never would have allowed any testimony about the lab results from an unqualified witness without Ms. McKay's testimony occurring first or the stipulated facts regarding her testimony agreed to and memorialized in writing.[5]   Since I verified that . . . Ms. McKay was present and ready to testify, I would have suggest[ed] to Mr. Santiago that it was in his best interest to sign the stipulation. Although a trial strategy decision, given my recollection of the other events at trial, it is my opinion that I would have discussed signing the stipulation with Mr. Santiago prior to Agent Caporossi's testimony.  It is also my opinion that I never would have allowed the agent to testify about the laboratory evidence unless I knew it was admissible/had been stipulated to before his testimony.

(ECF No. 54-1, at 1-2 (paragraph numbers omitted).)  The combination of the foregoing evidence demonstrates that the parties signed the stipulation on November 9, 2009, before Ms. McKay left town and before the Certificates of Analysis were entered into evidence.  (Nov. 9, 2009 Tr. 145.)

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"

---

[5] The Court's extensive experience with Ms. Grady generally corroborates her representations regarding her usual practices with respect to not allowing testimony from an unqualified witness in the absence of a stipulation.

Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting
Strickland, 466 U.S. at 689).   The prejudice component requires
a convicted defendant to "show that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.    A
reasonable probability is a probability sufficient to undermine
confidence in the outcome." Strickland, 466 U.S. at 694.   In
analyzing ineffective assistance of counsel claims, it is not
necessary to determine whether counsel performed deficiently if
the claim is readily dismissed for lack of prejudice.   Id. at
697.

The Government easily could have introduced the
Certificates of Analysis through Ms. McKay, who was present in
the courthouse.   Thus, counsel acted reasonably in encouraging
Santiago to sign the stipulation before the introduction of the
Certificates of Analysis.    Because Santiago failed to
demonstrate deficiency or prejudice, Claim Two will be
dismissed. Because Santiago waived his right to challenge the
admission of the Certificates of Analysis, his Sixth Amendment
claim set forth in Claim One lacks merit.   See United States v.
Merchant, 376 F. App'x 172, 178 (3d Cir. 2010).   Accordingly,
Claim One will be dismissed.

### III.   ALLEGEDLY BIASED JUROR

In Claim Three, Santiago faults counsel for failing to agree to strike for cause a juror who ran Lee's Auto where Ms. Grady and other members of the Public Defender's Office often brought their vehicles for service.  If anything, the record suggests the juror in question would be biased in favor of Ms. Grady and her client.  The Court ultimately struck the juror. (Nov. 9, 2009 Tr. 72.)  Given these circumstances, Santiago fails to demonstrate deficiency or prejudice on the part of counsel.  Claim Three will be dismissed.

### IV.   FAILURE TO FILE A MOTION TO SUPPRESS

In Claim Four, Santiago contends that counsel should have argued that the search of the vehicle from which the heroin was recovered occurred "without the consent of the petitioner or probable cause."  (Mem. Supp. § 2255 Mot. 12.)  As recited below, the record refutes Santiago's contention.

Agent Caporossi received information from a Mr. Bacot that "Alex" supplied Bacot with heroin.  (Nov. 9, 2009 Tr. 103-09.) Agent Caporossi eventually identified Alex as Alexander Santiago.  (Nov. 9, 2009 Tr. 121-22.)

Bacot then rented a red Chevy Camaro on which the police placed a tracking device.  (Nov. 9, 2009 Tr. 126-27.) Subsequently, Agent Caporossi tracked the Camaro between August 13 and August 15, 2009 as it drove from Santiago's residence in

9

Richmond, up to New Jersey, and then back to Virginia.   (Nov. 9, 2009 132-140.)

Virginia State Trooper Chris Flaherty had been alerted to be on the watch for the red Camaro driven by Santiago.   (Nov. 9, 2009 Tr. 236-37.)   Trooper Flaherty saw the vehicle going southbound on Interstate 95 travelling at 80 miles per hour in a 65 miles per hour zone.   (Nov. 9, 2009 Tr. 237.)   Trooper Flaherty stopped the Camaro.   (Nov. 9, 2009 Tr. 237.)   Shortly thereafter, Trooper Annis arrived with a narcotics detecting dog.   (Nov. 9, 2009 Tr. 242.)   The dog indicated the presence of narcotics in the Camaro.   (Nov. 9, 2009 Tr. 242.)   Trooper Flaherty began a search of the vehicle and immediately discovered a bag in the glove compartment, which the authorities later identified as containing heroin.   (Nov. 9, 2009 Tr. 247-48.)

Santiago's speeding provided Trooper Flaherty with the authority to stop the Camaro.   "[O]nce the drug detection dog alerted" Trooper Flaherty had probable cause to search the Camaro.   United States v. Eura, 440 F.3d 625, 630 (4th Cir. 2006) (citing United States v. Jeffus, 22 F.3d 554, 557 (4th Cir. 1994)), vacated on other grounds 552 U.S. 1090 (2008). Accordingly, counsel reasonably eschewed filing a motion to suppress.   Moreover, Santiago fails to demonstrate any reasonable probability that a motion to suppress would have

succeeded.  Because Santiago demonstrates neither deficiency nor prejudice, Claim Four will be dismissed.

## V.  MOTIONS TO AMEND AND TO SUPPLEMENT

On April 24, 2012, Santiago moved to amend his § 2255 Motion to add a claim that the Court incorrectly determined his sentence under the Sentencing Guidelines.  (ECF No. 51.)

On October 22, 2013, Santiago filed a Motion to Supplement. (ECF No. 52.)  In the Motion to Supplement, Santiago seeks to add the following grounds for relief:

| | |
|---|---|
| Claim Five | The two-level enhancement imposed for possession of a dangerous weapon violated Santiago's rights under Alleyne v. United States, 133 S. Ct. 2151 (2013).  (Mot. Supplement 2.) |
| Claim Six | Counsel performed deficiently by failing to object to the two-level enhancement Santiago received for possession of a dangerous weapon.  (Id. at 7.) |
| Claim Seven | Appellate counsel performed deficiently by failing to assert on appeal that the two-level enhancement for possession of a firearm violated Santiago's rights under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Alleyne v. United States, 133 S. Ct. 2151 (2013).  (Mot. Supplement 9-10.) |

The Court appropriately denies as futile leave to amend when the proposed claims lack merit.  See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000).  As discussed below,

11

that is the case here.   Accordingly, the Motion to Amend and
Motion to Supplement will be denied.

   **A.   The Motion To Amend**

   In the Motion to Amend, Santiago seeks to add a claim that
his sentence "was imposed in violation of the law" because the
Court "applied the wrong sentencing guideline range of 84-108
months." (Mot. Amend 1.)   Santiago elaborates that, because he
had an adjusted offense level of twenty-seven (27) and a
criminal history of II, his sentencing range was 78 to 97 months
of imprisonment.   (Id. at 1-2.)   Santiago is simply wrong.
Santiago had a base offense level of 26 and received a 2-level
enhancement for possession of a dangerous weapon, resulting in
an adjusted offense level of 28.   (Presentence Report Worksheet
A, at 1.)   Santiago also had a criminal history category II.
(Id. Worksheet C, at 2.)   The combination of these factors
resulted in a guideline range of 87 to 108 months of
imprisonment, U.S. Sentencing Guidelines Manual "U.S.S.G."),
Sentencing Table (2009), which was the range employed by the
Court.   (Presentence Report Worksheet D, at 1; Jan. 29, 2010 Tr.
3.)   Because Santiago's underlying claim is utterly without
merit, the Motion to Amend will be denied.

B.   **Motion To Supplement**

In proposed Claim Five, Santiago contends that by increasing his sentencing range for his possession of a dangerous weapon, the Court violated his rights as articulated by the Supreme Court in Alleyne.  In Alleyne, the Supreme Court addressed a defendant's mandatory minimum sentence of seven years for brandishing a firearm under 18 U.S.C. § 924(c)(1)(A)(ii).  Alleyne, 133 S. Ct. 2155-56.  The Supreme Court held that, other than prior convictions, "facts that increase [statutory] mandatory minimum sentences must be submitted to the jury."  Id. at 2163.

Alleyne has no application to the Court's finding that Santiago possessed a dangerous weapon for the purposes of calculating his advisory sentencing guideline range.  See United States v. Benn, --- F. App'x ----, Nos. 12-4522, 12-4803, 12-4804, 12-4851, 2014 WL 2109806, at *11 (4th Cir. May 21, 2014) ("'[F]actual findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in Alleyne.'" (quoting United States v. Ramirez-Negron, 751 F.3d 42, 48 (1st Cir. 2014))).  Accordingly, Claim Five lacks merit.

13

In part of Claims Six and Seven, Santiago faults trial and appellate counsel for failing to raise the Alleyne argument set forth in Claim Five.   That portion of Claims Six and Seven lacks merit for the reasons set forth above.   Additionally, Santiago contends trial and appellate counsel should have challenged the application of the two-level enhancement because the Government failed to demonstrate a sufficient connection between the firearm and Santiago's drug trafficking.   As explained below, Santiago is wrong.   See United States v. Santiago, 406 F. App'x 746, 748 (4th Cir. 2010) (rejecting this same challenge by Santiago under plain error analysis).

Santiago received a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1)[6] because the police recovered a loaded handgun from Santiago's bedroom in close proximity to drug trafficking paraphernalia.  (Presentence Report ¶¶ 25-26.)   The pertinent commentary directs the Court to apply the adjustment "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1(b)(1) cmt. n.3.  "In order to demonstrate that a weapon was present, the Government need show only that 'the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'"  United States v. Vilaisane, 267 F. App'x 286, 288

---

[6] "If a dangerous weapon (including a firearm) was possessed, increase by **2** levels."  U.S.S.G. § 2D1.1(b)(1).

(4th Cir. 2008) (quoting <u>United States v. McAllister</u>, 272 F.3d 228, 233-34 (4th Cir. 2001)).   The presence of the loaded handgun in the same room with the drug trafficking paraphernalia indicates the firearm was connected to Santiago's heroin trafficking.   <u>See</u> <u>United States v. Manigan</u>, 592 F.3d 621, 630-32 (4th Cir. 2010) (citations omitted) (emphasizing the connection between handguns and drug trafficking); <u>Vilaisane</u>, 267 F. App'x at 288 (citation omitted).   Given the foregoing circumstances, the failure of counsel to challenge the sentencing enhancement was reasonable.   Moreover, Santiago fails to demonstrate a reasonable probability of a different result had counsel pursued the argument Santiago urges here.   Because permitting Santiago to amend to add Claims Five through Seven would be futile, the Motion to Supplement will be denied.

## VI.   CONCLUSION

Santiago's claims will be dismissed.   Santiago's Motion for Default Judgment (ECF No. 56), Motion to Amend (ECF No. 51), and Motion to Supplement (ECF No. 52) will be denied.   The § 2255 Motion (ECF No. 41) will be denied.   The action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1)(B).   A COA will not issue unless a prisoner makes "a substantial showing of the denial of

a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Santiago has not satisfied this standard. The Court will deny a certificate of appealability.

The Clerk is directed to send a copy of this Memorandum Opinion to Santiago and counsel for the Government.

                          /s/   _R E P_____

                          Robert E. Payne
                          Senior United States District Judge

Richmond, Virginia
Date: August 25, 2014

16